UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FERLANDE MILORD-FRANCOIS,

                    Plaintiff,           **Docket No.:**

      -against-

THE NEW YORK STATE OFFICE OF THE    **<u>COMPLAINT</u>**
MEDICAID INSPECTOR GENERAL,
DENNIS ROSEN, JANINE DANIELS-
RIVERA, and JOHN and JANE DOE (said
names being fictitious, the persons intended
being those who aided and abetted the unlawful
conduct of the named Defendants),    **<u>JURY TRIAL REQUESTED</u>**

              Defendants.

-------------------------------------------------------X

       Plaintiff **FERLANDE MILORD-FRANCOIS**, by her attorneys,

**MADUEGBUNA COOPER, LLP**, for her complaint herein alleges:

## I.    <u>THE NATURE OF THIS ACTION</u>

       1.    In this employment discrimination case, Defendants forced Plaintiff, a

black attorney of Haitian descent, to endure a white subordinate's openly racist

behavior, thereby subjected her to a discriminatory and hostile work environment,

in order to placate the white employee at the expense of Plaintiff's civil rights.

       2.    In short, Defendants decided that keeping a discriminatory white

employee happy was more important than protecting black employees from the

white employee's openly racist behavior, rants and pejorative comments.

3.     Defendants ignored and refused to investigate Plaintiff's multiple discrimination complaints about the white employee's racist behavior and told Plaintiff she had to deal with it.

4.     When she persisted with her discrimination complaints, Defendants protected the subordinate and blamed Plaintiff, who then faced retaliation, including unfounded negative evaluations, a demotion from her supervisory attorney position with a corresponding salary cut and replacement with a less-qualified white male.

5.     As a result, Plaintiff brings this action for injunctive relief, declaratory judgment and money damages to remedy discrimination on the basis of race, color and national origin in the terms, conditions and privileges of employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.* ("Title VII"); Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983") and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (the "Equal Protection Clause"); the New York Human Rights Law, as contained in New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, as contained in the Administrative Code of the City of New York § 8-107 *et seq.* ("NYCHRL").

6.     Plaintiff contends that the terms, conditions and privileges of her employment relationship with Defendant THE NEW YORK STATE OFFICE OF

THE MEDICAID INSPECTOR GENERAL ("OMIG"), were adversely affected, in part, because of her race, color, and national origin and in retaliation for her complaints of discrimination.

## II.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

8.    This Court has supplemental jurisdiction over the state causes of action pleaded.

9.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

## III.    PROCEDURAL REQUIREMENTS

10.    Prior to commencing this action, Plaintiff served a copy of the complaint on the New York City Commission of Human Rights and the Corporation Counsel of the City of New York, in accordance with New York City Administrative Code Section 8-502(c).

11.    Charges of discrimination and retaliation were filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000e *et seq*.

12.    The EEOC issued a Right to Sue Notice to Plaintiff on November 2, 2018, which Plaintiff received on November 2, 2018.

13.    This lawsuit was commenced within 90 days of Plaintiff receiving the Right to Sue Notice.

**IV.    PARTIES**

14.    Plaintiff is a black female of Haitian descent.

15.    Plaintiff is also an attorney admitted to practice law in New York State and holds a Master's degree in Community Health and Business Administration.

16.    Plaintiff has been continuously employed by OMIG since July 2010.

17.    Plaintiff currently works in OMIG's New York City Office at 90 Church Street, New York, New York ("NYC Office") as a Senior Attorney in the Office of Counsel.

18.    At all relevant times, Plaintiff is the only black employee working as an attorney in the Office of Counsel at OMIG's NYC Office.

19.    Defendant OMIG is an agency of the State of New York and an independent entity created within the New York State Department of Health ("DOH") to promote and protect the integrity of the Medicaid program in New York State, by conducting fraud, waste, and abuse control activities.

20.    At all relevant times, Defendant DENNIS ROSEN ("ROSEN"), was and is the Medicaid Inspector General for OMIG, having been appointed by Governor Andrew Cuomo in or about January 2015, and works out of OMIG's

main office, located at 800 North Pearl Street, Albany, New York ("Albany Office"). OMIG has six regional offices including the NYC Office.

21.     Upon information and belief, ROSEN has appointing authority and final authority for policy-making and personnel decisions under New York Public Health Law § 32.

22.     ROSEN, a white male, is sued in his official capacity for injunctive relief and in his personal capacity for monetary damages.

23.     At all relevant times, Defendant JANINE DANIELS-RIVERA ("DANIELS-RIVERA") was and is the General Counsel of OMIG and is based in OMIG's Albany Office.

24.     DANIELS-RIVERA, an African-American female of non-Haitian national origin, is sued here in her personal capacity.

25.     At all relevant times, ROSEN and DANIELS-RIVERA are responsible for developing, implementing and enforcing personnel policies and procedures affecting the terms and conditions of employment of employees within OMIG, including Plaintiff and all employees within the Office of Counsel.

## V.     FACTS COMMON TO ALL CAUSES OF ACTION

*OMIG & Office of Counsel Structure:*

26.     OMIG contains six major divisions including the Office of Counsel, the Division of Administration, the Division of Investigations, and the Division of

Medicaid Audits.

27.    The Office of Counsel provides legal support, guidance, and represents all six OMIG divisions.

28.    As OMIG General Counsel since 2009 and reporting directly to ROSEN, DANIELS-RIVERA manages the Office of Counsel, which includes attorneys and support staff divided between two units – Hearings & Litigation and House Counsel.

29.    DANIELS-RIVERA also provides legal representation, advice and counsel to ROSEN and other agency officials.

30.    She also has administrative duties for hiring and supervising staff in Albany, Buffalo and New York City in addition to managing and directing the legal work.

31.    The staffing for the Office of Counsel includes the General Counsel, the Deputy Counsel, an Associate Counsel, Associate Attorneys, Senior Attorneys and support staff in various administrative titles.

_Plaintiff's Background and Promotion_:

32.    Plaintiff achieved a distinguished career at OMIG, earning satisfactory performance reviews and a promotion, as well as assuming increasing responsibilities within OMIG.

33.     Plaintiff was hired as a Senior Attorney (Salary Grade ("SG") – 25) in July 2010 by Devin Moss ("Moss"), a white male, and assigned to the NYC Office.

34.     As a Senior Attorney, Plaintiff demonstrated a deep commitment to OMIG and to her duties. While representing OMIG before administrative agencies and New York courts, Plaintiff has prevailed in all her cases.

35.     At the time of her hire as a Senior Attorney in July 2010, Moss was Plaintiff's supervisor, until his retirement in 2014.

36.     From 2014 to current, Plaintiff's supervisor has been Deputy Counsel Harry Glick ("Glick"), also a white male.

37.     At all relevant times, Glick reported directly to DANIELS-RIVERA and supervises the work and staff in the NYC Office.

38.     In or around February 2015, Plaintiff was canvassed for a promotion to the permanent position of Associate Attorney (SG – 28) in the NYC Office. This promotion included such responsibilities as providing supervisory review, support and training for Senior Attorneys, providing assistance on all aspects of hearing preparations and researching and analyzing complex legal issues.

39.     After a lengthy interview process, Plaintiff and another Senior Attorney were appointed to Associate Attorney positions on August 13, 2015.

40.    In October 2015, Plaintiff was assigned to supervise one Senior Attorney, Tina Dolman ("Dolman"), a white female. In March 2016, Plaintiff was assigned a second Senior Attorney, a new employee, Nancy Pak.

41.    As soon as she was promoted, Plaintiff was placed in a standard probationary period with an end date of August 11, 2016.

42.    The probationary period was supposed to include three Probation & Development Reports ("Probation Reports") from Glick, her supervisor, on September 24, 2015, January 28, 2016 and July 28, 2016, respectively.

*Throughout 2015 Robyn Henzel Engages in Discriminatory Conduct:*

43.    At all relevant times, ROSEN and DANIELS-RIVERA, with the assistance of OMIG Labor and Employment Attorney Dionne Wheatley ("Wheatley"), discriminated against Plaintiff based on her race, Haitian ancestry and national origin by subjecting Plaintiff to race-based harassment and refusing to stop openly discriminatory behavior towards Plaintiff by Robyn Henzel ("Henzel"), a white female, subordinate to Plaintiff.

44.    In or around January 2014, Henzel was hired as a Senior Attorney in the NYC Office.

45.    Throughout 2015, Henzel engaged in openly discriminatory behavior towards black employees, including Plaintiff.

46.     First, in or around March 2015, Henzel falsely told office staff that Plaintiff was always going into an empty office to "get drugs" and "may have a problem."

47.     Second, in or around April 2015, Henzel falsely complained to her supervisor, Glick, that Plaintiff did not respect her and attempted to undermine her when Plaintiff offered to help Henzel prepare a case. Without any basis, Glick, following ROSEN's orders, told Plaintiff to stop "bullying" Henzel.

48.     Third, in or around May or June 2015, Henzel told Plaintiff and other staff, including the only black legal secretary in the NYC Office, named Latwanda Manson ("Manson"), that she was attending her former black colleague's father's funeral in Harlem to network. Henzel stated that if she did not return, it was because "they" had robbed or killed her. When a white paralegal said, "Are you crazy, I live in Harlem, it is safer than it is down here," Henzel responded with a grin, "You don't live by them, do you?"

49.     Fourth, in or around July 2015, Henzel confronted Plaintiff around other colleagues, including Dolman and Manson, and said, in sum and substance, "you have an angry face and attitude, and your angry black face scares me."

50.     Fifth, in or around August 20, 2015, Manson, the black Legal Secretary, filed a complaint after Henzel threatened to call the police on Manson in the office because she allegedly verbally disrespected Henzel. Subsequently,

Wheatley provided a signed response to Manson's complaint stating that Henzel had the right to feel threatened. DANIELS-RIVERA and Wheatley not only ruled that Manson's complaint was unsubstantiated, but required Manson to attend workplace relationship trainings and, upon information and belief, did not require Henzel to attend any such training.

51.    Sixth, at various other times in 2015, Henzel ran background checks on black employees in the NYC office. Plaintiff and Manson verbally complained to OMIG's Director of Employee Relations Matthew Chiesa ("Chiesa") about the background checks but no actions were taken.

52.    Seventh, until Henzel left the NYC office in or around August 2016, she continued to tell Plaintiff that her "black face" was "angry" or "scary" and told staff she feared Plaintiff.

*In March 2016, Plaintiff Reports Henzel's Discriminatory Conduct:*

53.    In March 2016, Plaintiff spoke to Director of Employee Relations Chiesa and reported Henzel's comments that Plaintiff's "black face scared" her and that Henzel had made other comments Plaintiff considered discriminatory, including the background checks.

54.    Chiesa replied "ok, I understand." Plaintiff never heard any response from her discrimination complaint.

55.    Manson also complained to Chiesa about Henzel's discriminatory comments and, upon information and belief, heard no response from Chiesa or Defendants.

*Throughout 2016, Defendants Ignore Complaints about Henzel's Discriminatory Conduct and Focus on Placating Henzel:*

56.    Despite Plaintiff's complaint and their knowledge of Henzel's openly racist behavior, ROSEN and DANIELS-RIVERA as well as Wheatley and others in OMIG Management, such as Chiesa, condoned Henzel's behavior and subjected Plaintiff to harassment and differential treatment based on her race and Haitian ancestry.

57.    In March 2016, Plaintiff was assigned to supervise a new Senior Attorney, Nancy Pak ("Pak"), a white female. However, ROSEN ordered Glick, Plaintiff's supervisor, to block Plaintiff from supervising Pak because ROSEN wanted Pak and Henzel to feel comfortable and become "friends."

58.    When Plaintiff asked Glick about supervising Pak, Glick always responded that he is following directions from ROSEN to ensure Pak and Henzel remain friends and there are no issues.

59.    On or about March 2016, Wheatley assigned work to Pak, and advised her not to discuss the assignment with Plaintiff, who was Pak's supervisor, under the pretense of confidentiality.

- 11 -

60.     Later in March 2016, DANIELS-RIVERA and Wheatley summoned Pak to Albany without informing Plaintiff.

61.     On April 12, 2016, Glick, Associate Attorney Barry Mandel ("Mandel"), another Senior Attorney and Plaintiff attended a meeting with ROSEN to inform him about problems in the NYC office.

62.     When Glick told ROSEN he considered the legal staff "his family" and was concerned about the OMIG legal department's high turnover rate, ROSEN responded, "Don't fucking tell me about the staff being your fucking family, when they are writing complaints about Robyn." ROSEN continued, "You have no fucking balls allowing this shit to go on."

63.     ROSEN then parroted Henzel's discriminatory statements by telling Plaintiff, "I know you. You are the one always with the fucking scowl face upsetting Robyn ….. and I hear you have a problem with taking directions."

64.     Plaintiff was shocked at ROSEN's discriminatory comments, and left the meeting in tears, feeling belittled and marginalized.

        a. _The April 13, 2016 Meeting_:

65.     On April 13, 2016, ROSEN, during a meeting with DANIELS-RIVERA, Glick, Mandel and Plaintiff, claimed Henzel was being bullied and said he would not tolerate it and wanted DANIELS-RIVERA to ensure that Henzel was

treated well. ROSEN ended the meeting by stating, in some and substance, that "if any of you don't like it, there's the door."

         *b. <u>The April 19, 2016 Meeting</u>:*

66.     On April 19, 2016, DANIELS-RIVERA and Wheatley began leading monthly mandatory meetings with NYC Office managers to ensure Henzel was comfortable.

67.     During the first meeting on April 19, 2016 (the "April 19 meeting"), DANIELS-RIVERA and Wheatley discussed the office atmosphere, how serious ROSEN took the problem, and ideas to make it more welcoming for Henzel.  As part of the solution, they required that employee office doors stay open all day to appear welcoming to Henzel and that all managers must personally greet Henzel with "good morning" daily in her office.

68.     At the April 19 meeting, DANIELS-RIVERA never addressed Henzel's discriminatory comments about Plaintiff.

69.     On April 20, 2016, Pak told Plaintiff that ROSEN told her that Henzel should sue OMIG and the New York City Office of Counsel staff for "bothering her."

70.     Unknown to Plaintiff at the time, ROSEN was already holding regular private meetings with Henzel and Pak separately to discuss their private issues and to ensure that Plaintiff was complying with the rules designed to placate Henzel.

As these private meetings with ROSEN continued, Henzel's false allegations about Plaintiff became much more frequent, including complaints about Plaintiff and Manson, two black employees, speaking together.

        *c. The May 6, 2016 Meeting:*

71.    On May 5, 2016, Henzel refused to accept an assignment Plaintiff gave her and became disruptive. Henzel stated that ROSEN told her, in sum and substance, "you will all get fired if you upset me."

72.    On May 6, 2016, Glick recounted Henzel's insubordination to DANIELS-RIVERA.

73.    As a result, DANIELS-RIVERA held a meeting with Glick, Mandel and Plaintiff, and asked what could Plaintiff have done differently to avoid Henzel's reaction.

74.    Plaintiff, in disbelief, told DANIELS-RIVERA it was a problem with Henzel not respecting Plaintiff's race because Henzel told Pak if the assignment was given to her by Mandel (who is white) she would have complied.

75.    Plaintiff told DANIELS-RIVERA that the assignment was approved by Glick and Mandel, and other Senior Attorneys were also assigned similar work in all the various regions by Plaintiff on the same day with no prior approvals from their supervisors, and there were no issues with the other attorneys.

76.    Plaintiff further reiterated her complaints to DANIELS-RIVERA and Glick about Henzel's discriminatory statements about and to her, including Henzel telling Plaintiff that she had an "angry" and "scary black face" and that "they" might kill her in Harlem.

77.    DANIELS-RIVERA smirked and claimed Henzel did not mean what she said and told Plaintiff to ignore Henzel's prior statements and speak with her to clear the air, and that Plaintiff was too emotional about the situation.

78.    One week after the May 6, 2016 meeting, DANIELS-RIVERA held a meeting with Henzel and Plaintiff and again asked Plaintiff what could she have been done differently in the May 5 incident with Henzel. Plaintiff again responded that she appropriately handled the interaction.

79.    Henzel then accused Plaintiff of being disrespectful to her with the assignment, and continued saying Plaintiff's "angry face" upsets her.

80.    Instead of addressing Henzel's discrimination, DANIELS-RIVERA forced Plaintiff apologize to Henzel while failing to address Henzel's discriminatory conduct toward Plaintiff.

d. *The May 24, 2016 Meeting*:

81.    During a meeting on May 24, 2016, ROSEN asked DANIELS-RIVERA, Glick, Mandel and Plaintiff what changes had been made to benefit Henzel.

82.    DANIELS-RIVERA told ROSEN about her new policies of "good morning" and "mandatory open office doors" and reported that Dolman did not want to comply with the open-door request.

83.    ROSEN forcefully asked Plaintiff, "Do you have a problem writing Tina [Dolman] up if she does not open her door?" Plaintiff responded, "Tina has kept her door open." ROSEN then said, "If she does not comply, I expect you as her supervisor to write her up."

84.    ROSEN also told Plaintiff that she contributed to the bad environment, and threatened that Henzel and Pak would and should be able to file a discrimination lawsuit against Plaintiff and Manson.

85.    When Plaintiff told ROSEN that she and Manson were the only two black staff in the office and she never did anything to Henzel, he answered, in sum and substance, "Yes, because you are always carrying on in the hallway. It's a fucking gabfest in the office between you two and that is not comfortable for people….."

86.    ROSEN continued with the meeting by saying that Henzel will be leaving OMIG before turning to Plaintiff and telling her again with the threatening tone, "I'm glad you got what you wanted but don't go out to start the celebration because it's not finalized yet."

87.    ROSEN also said that he gave a wonderful job recommendation for Henzel to the director of another agency (even though ROSEN had never worked directly with her).

88.    When Mandel suggested Henzel was not leaving OMIG, ROSEN, threatening Plaintiff's job, told her that "for your sake, I hope they are right, and she doesn't leave."

89.    ROSEN knew about and never addressed Plaintiff's discrimination complaints about Henzel, but stated during the meeting "We all know Robyn has quirks, we just have to work around them with her."

90.    During the May 24 meeting, ROSEN and DANIELS-RIVERA implemented another policy to ensure Henzel's continued comfort:  Plaintiff was not allowed to speak to Manson in the hallway. Glick told Plaintiff on several occasions to "go back to your office" whenever he saw Plaintiff and Manson communicating, while all other non-black employees were allowed to engage in conversations.

91.    During another May 2016 one-on-one meeting, Plaintiff again told DANIELS-RIVERA about Henzel's discriminatory behavior. DANIELS-RIVERA responded, "these are the things managers have to deal with and I am trying to avoid being named in a lawsuit," while suggesting Plaintiff was responsible for stopping Henzel's conduct.

92.    In comparison, Mandel, the white Associate Attorney who also reported to Glick and DANIELS-RIVERA, did not keep his door open for Henzel's benefit or greet her in the morning and, upon information and belief, was never required to do so and did not receive any negative Probation reports or other adverse consequences as a result.

93.    Moreover, unlike black employees Plaintiff and Manson, upon information and belief, Mandel was never ordered not to speak to other white employees in the office.

*DANIELS-RIVERA Retaliates against Plaintiff with a Negative Probation Report at a July 11, 2016 Meeting:*

94.    Defendants, with Wheatley's help, and the involvement of ROSEN, retaliated against Plaintiff when she complained about retaliation.

95.    On July 11, 2016 ("July 11, 2016 Meeting"), DANIELS-RIVERA gave Plaintiff what purports to be her first Probation Report that falsely claimed Plaintiff had an unsatisfactory performance and extended Plaintiff's probation from August 11, 2016 until September 21, 2016.

96.    However, prior to July 11, 2016, DANIELS-RIVERA ignored and never signed the positive probation report Glick submitted to her for signature in December 2015. On or around mid-December 2015, Plaintiff asked Glick about her Probation Report, who said he submitted it to DANIELS-RIVERA for her

signature and "not to worry" because Plaintiff received "highly effective" in several categories and had no need for concern.

97.     As Defendants have admitted, instead of approving the positive Probation Report Glick submitted in December 2015, DANIELS-RIVERA waited until Glick was on vacation and, on July 11, 2016, gave Plaintiff her own negative probation report, in violation of OMIG policy and New York civil service law, which was missing Glick's signature required to be on the "Supervisor Signature" line.

98.     Additionally, unknown to Plaintiff at the time, on or about July 7, 2016, Glick had given DANIELS-RIVERA a highly positive second Probation Report for Plaintiff, deemed it as the last probation report for Plaintiff, and even recommended that Plaintiff's probation be completed in July 2016 before the August 2016 date.

99.     Despite working in Albany and not being familiar with Plaintiff's work, DANIELS-RIVERA rated Plaintiff a "2," or the lowest number to be considered "effective," on all categories except "Interpersonal Relations" where she received a "1," meaning "unsatisfactory."

100.     Apparently referencing Plaintiff's complaints and reactions about Henzel's racist behavior, DANIELS-RIVERA falsely wrote that Plaintiff's

interactions with staff were not always "appropriate, tactful, respectful or professional," and that this had created office issues.

101.  DANIELS-RIVERA, to the knowledge, active involvement, and approval of ROSEN, baselessly extended Plaintiff's probation past the 52 weeks by another 6 weeks allegedly due to absences, when Plaintiff was actually only absent for a total of 15.73 days (or less than three weeks) during her entire probationary period.

102.  In comparison, DANIELS-RIVERA did not use her discretion to extend Henzel's probation in December 2015 when she was absent for more than 28 days during her 52 weeks probation period.

103.  At the July 11, 2016 Meeting, Plaintiff reminded DANIELS-RIVERA that she never received any negative feedback from either Glick or DANIELS-RIVERA during the relevant probation period.

104.  Nonetheless, DANIELS-RIVERA maintained at the July 11, 2016 Meeting that Plaintiff's probation period must be extended and as a result a development plan was created to "assess her level of commitment to the leadership of the Office of Counsel" and "commitment to doing what it takes to become an effective supervisor." Curiously, Plaintiff was never given further instructions about the development plan.

105.    After the July 11, 2016 Meeting, Plaintiff continued to report to Glick, who continued to express no dissatisfaction with her performance, and was shocked at the July 2016 Probation Report issued Plaintiff by DANIELS-RIVERA.

*Henzel Resigns from OMIG in July 2016:*

106.    Later in July 2016, DANIELS-RIVERA announced that Henzel was resigning next month and asked Plaintiff, who was not Henzel's supervisor, how she would commemorate Henzel's departure, and whether she would organize a luncheon.

107.    Upon information and belief, DANIELS-RIVERA had never asked staff what they would do to say goodbye to an employee.

108.    In the continued effort to humiliate Plaintiff, on August 9, 2016, DANIELS-RIVERA and Wheatley travelled to the New York City Office for a one-hour staff meeting with all the supervisors.

109.    During the meeting, Wheatley pulled out a transcript of a hearing decision in which OMIG did not prevail, and blamed Plaintiff for the decision. Such finger pointing has never happened to any other supervisor in the OMIG Office of Counsel with regard to a hearing decision.

110.    Plaintiff reiterated that she was not present for the entire hearing, she was not supervising the assigned attorney at the time of the hearing, and that the ALJ made her decision based on the facts of the case. But Wheatley, who had

never conducted a hearing at OMIG, continued to blame Plaintiff for the loss as DANIELS-RIVERA sat quietly in approval as Plaintiff was being publicly humiliated in front of her colleagues.

*Defendants Demote Plaintiff to Senior Attorney:*

111.   On September 14, 2016, DANIELS-RIVERA gave Plaintiff a negative Final Probation Report, dated July 13, 2016, and with the knowledge, approval, and on the instructions of ROSEN, demoted her to Senior Attorney, the title she assumed when she *first* joined OMIG in 2010.

112.   DANIELS-RIVERA told Plaintiff that she was being demoted because Plaintiff had not proven she had DANIELS-RIVERA's back and did not implement the "good morning" policy to greet Henzel every day.

113.   When Plaintiff told DANIELS-RIVERA "but you never told me you had issues with my work," DANIELS-RIVERA responded "I do not have any problems with your work."

114.   The Probation Report specifically cited Plaintiff's failure to say good morning to one supervisee – a reference to Henzel.

115.   In response to Plaintiff's complaints about Henzel's discrimination, DANIELS-RIVERA responded that she knew about Henzel's behavior but told Plaintiff, "as a manager, you must take it" and said she had been called names too and learned to deal with it as a manager.

- 22 -

116.   In their haste to unlawfully discriminate and retaliate against Plaintiff, Defendants' demotion of Plaintiff violated New York civil service law and OMIG's own policies.

117.   On October 19, 2016, Plaintiff had a telephone exit interview with OMIG's Director of Human Resources, Debra Meade ("Meade") and reported Henzel's discriminatory conduct, and how Defendants ignored her complaints.

118.   Although Meade promised to investigate the complaints, Plaintiff never received a response.

*Defendants Continue to Retaliate Against Plaintiff Demoting Her:*

119.   Since Plaintiff's demotion in September 2016, and her further discrimination complaints, DANIELS-RIVERA has directly and indirectly through Glick intentionally assigned her cases with no turnaround time to adequately present at her hearings. In contrast, other, non-black attorneys like Pak who worked under DANIELS-RIVERA and Glick and did not complain about discrimination, received light caseloads and enough time to prepare for hearings.

120.   On November 4, 2016, Plaintiff appealed her demotion with the New York State Department of Civil Service based on civil service law violations.

121.   On December 20, 2016, the day of the NYC Office Holiday Party, DANIELS-RIVERA and Wheatley scheduled a "year in review" meeting with Plaintiff and Glick.

122.   During Plaintiff's entire tenure at the OMIG, there has never been a "year in review" meeting with any staff member. And there was no "year in review" with the Albany office staff or the Buffalo office staff. In fact, there has not been any such "year in review" meetings since the one retaliatorily scheduled for Plaintiff in December 2015.

123.   During the December 2016 "year in review" meeting, DANIELS-RIVERA and Wheatley both interrogated Plaintiff for over an hour about her "lack of respect for management."

124.   At some point during this meeting, when DANIELS-RIVERA asked Glick if he had any comments, Glick boldly answered, "I don't have any problems with Ferlande's work, I never have."

125.   In addition, since Plaintiff's demotion and her complaints about it, DANIELS-RIVERA has sabotaged Plaintiff's work and reputation by refusing to approve Plaintiff's work for the past three years, as is required in order for her work to move forward. As a result, Plaintiff's work has been delayed and lies sitting with the General Counsel dating back as far as 2015, without any progress due to DANIELS-RIVERA's actions, unlike the work of other employees who have not made complaints of discrimination and whose work DANIELS-RIVERA approves on a timely basis.

126.   As a result, Plaintiff must apologize to judges, opposing counsel, and

pro-se litigants due to the lengthy delays in her cases has caused.

127.   On top of deliberately delaying Plaintiff's work, DANIELS-RIVERA continuously spread rumours at OMIG that Plaintiff is "not working and not moving her work."

*Defendants Give Plaintiff's Former Position to a White Male Attorney:*

128.   To make matters worse, on February 1, 2017, Michael D'Allaird ("D'Allaird"), a white male, was promoted to the Associate Attorney position Plaintiff was demoted from.

129.   The item number for the Associate Attorney position D'Allaird was promoted into was, upon information and belief, moved from the NYC Office to the Albany Office at DANIELS-RIVERA's request, despite the need for the position in the NYC Office.

130.   As an Associate Attorney, unlike Plaintiff's prior workload as an Associate Attorney, D'Allaird does not carry a hearing or litigation caseload and supervised no Senior Attorneys for the first six months of his tenure.

131.   Defendants took all the foregoing actions in order to deprive Plaintiff of employment opportunities and other contractual opportunities because of her race, color, and national origin.

132.   As a proximate result of Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer significant monetary loss, and damages,

including the loss of past and future earnings, and other employment benefits.

133.   As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer from migraine headaches, severe emotional distress, lasting embarrassment, humiliation and anguish, as well as other incidental and consequential damages and expenses.

134.   Defendants' conduct was outrageous and malicious, intended to injure Plaintiff, and carried out with reckless indifference to Plaintiff's protected civil rights, thereby entitling her to punitive damages.

135.   Plaintiff has no complete, plain, clear, or adequate remedy at law.

136.   Defendants must be restrained from further discrimination against Plaintiff and directed to cease and desist from their unlawful acts against Plaintiff.

137.   Defendants' acts against Plaintiff continue.

138.   Plaintiff believes that the Defendants' unlawful acts against her will continue until this Court by injunction and/or its judgment compels otherwise.

## FIRST COUNT AGAINST DEFENDANT OMIG
### (Race, Color, and National Origin Discrimination under Title VII)

139.   Plaintiff repeats and realleges each allegation in each numbered paragraph above.

140.   OMIG subjected Plaintiff to differential terms and conditions of employment because of her race, color, and national origin.

- 26 -

141.    Defendants forced Plaintiff, a black attorney of Haitian descent, to endure a white subordinate's openly racist behavior and, thereby, subjected her to a discriminatory workplace in order to placate the white employee at the expense of Plaintiff's civil rights.

142.    OMIG's discriminatory treatment towards Plaintiff included but was not limited to:

      i.   Issuing two negative Probation Reports and ignoring positive Probation Reports from Plaintiff's direct supervisor;

     ii.   Extending Plaintiff's probation as an Associate Attorney;

   iii.   Forbidding Plaintiff from speaking with other black employees;

   iv.   Forcing Plaintiff to tolerate Henzel's discriminatory conduct;

     v.   Refusing to investigate Plaintiff's discrimination complaints;

   vi.   Subjecting Plaintiff to harassing meetings to intimidate and belittle her;

  vii.   Functionally removing Plaintiff's supervisory duties of Pak to placate Henzel; and,

 viii.   Demoting and reducing Plaintiff's salary and replacing her with a white male.

143.    OMIG took all the foregoing actions to deprive Plaintiff of equal employment opportunities and other contractual opportunities on account of her

- 27 -

race, color, and national origin.

144.   Because of OMIG's willful and deliberate actions, and as a proximate cause thereof, Plaintiff has been and continues to be denied her right to equal employment opportunity in violation of Title VII.

145.   As a result, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## SECOND COUNT AGAINST DEFENDANT OMIG
### (Retaliation under Title VII)

146.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

147.   OMIG's above conduct was retaliation for Plaintiff's discrimination complaints on the basis of race, color and national origin, and violated Plaintiff's rights under Title VII.

148.   OMIG's retaliation against Plaintiff included but was not limited to:

   i.  Issuing two negative Probation Reports and ignoring positive Probation Reports from Plaintiff's direct supervisor;

   ii. Extending Plaintiff's probation as an Associate Attorney;

   iii. Forbidding Plaintiff from speaking with other black employees;

   iv. Forcing Plaintiff to tolerate Henzel's discriminatory conduct;

   v.  Refusing to investigate Plaintiff's discrimination complaints;

vi.  Subjecting Plaintiff to harassing meetings to intimidate and belittle her;

vii.  Functionally removing Plaintiff's supervisory duties of Pak to placate Henzel;

viii.  Demoting and reducing Plaintiff's salary and replacing her with a white male; and,

ix.  Deliberately delaying approval of Plaintiff's work while spreading false rumours that Plaintiff is a poor employee.

149.  As a result, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## THIRD COUNT AGAINST DEFENDANTS
## ROSEN and DANIELS-RIVERA
### (Discrimination in violation of the Equal Protection Clause pursuant to Section 1983)

150.  Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

151.  The Individual Defendants subjected Plaintiff to differential terms and conditions of employment because of her race, color and ancestry.

152.  Because of the Individual Defendants' deliberate actions, and as a proximate cause, Plaintiff has been and continues to be denied her right to equal

employment opportunity in violation of the Equal Protection Clause pursuant to Section 1983.

153.  As a result, Plaintiff suffered damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## FOURTH COUNT AGAINST DEFENDANTS
## ROSEN and DANIELS-RIVERA
### (Retaliation in violation of the Equal Protection Clause pursuant to Section 1983)

154.  Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

155.  The Individual Defendants' conduct was retaliation for Plaintiff's discrimination complaints on the basis of race, color, and ancestry and violated Plaintiff's rights under the Equal Protection Clause pursuant to Section 1983.

156.  As a result, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## FIFTH COUNT AGAINST DEFENDANTS
## ROSEN and DANIELS-RIVERA
### (Race, Color and National Origin Discrimination under the NYSHRL)

157.  Plaintiff repeats and realleges each allegation in each numbered paragraph above.

158.  At all relevant times, Plaintiff was an "employee" within the meaning of the NYSHRL.

- 30 -

159.   At all relevant times, ROSEN and DANIELS-RIVERA were "employers" under the NYSHRL.

160.   By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her race, color and national origin, the individual Defendants violated the NYSHRL.

161.   As a result, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SIXTH COUNT AGAINST DEFENDANTS**
**ROSEN and DANIELS-RIVERA**
**(Retaliation under the NYSHRL)**

162.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

163.   All the various actions the Individual Defendants took against Plaintiff after she complained of discrimination constitute unlawful retaliation in violation of NYSHRL.

164.   As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SEVENTH COUNT AGAINST DEFENDANTS**
**ROSEN and DANIELS-RIVERA**
**(Race, Color and National Origin Discrimination**
**under the NYCHRL)**

165.   Plaintiff repeats and realleges each allegation in each numbered

paragraph above.

166.   At all relevant times, Plaintiff was an "employee" within the meaning of the NYCHRL.

167.   At all relevant times, ROSEN and DANIELS-RIVERA were "employers" under the NYCHRL.

168.   By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her race, color, and national origin, the Individual Defendants violated the NYCHRL.

169.   As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### EIGHTH COUNT AGAINST DEFENDANTS
### ROSEN and DANIELS-RIVERA
### (Retaliation in Violation of NYCHRL)

170.   Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

171.   All the various actions taken by the Individual Defendants against Plaintiff after she complained of discrimination constitute unlawful retaliation in violation of NYCHRL.

172.   As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## NINTH COUNT AGAINST DEFENDANT OMIG
### (Hostile Work Environment under Title VII)

173.   Plaintiff repeats and realleges each allegation in each numbered paragraph above.

174.   OMIG subjected Plaintiff to a hostile working environment because of her race, color, and national origin.

175.   Based on Plaintiff's race, color, and national origin, OMIG and others acting on their behalf, have continuously subjected Plaintiff to harassment which had the effect of unreasonably interfering with Plaintiff's work and created an intimidating, hostile or offensive work environment that seriously affected Plaintiff's psychological well-being.

176.   As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## TENTH COUNT AGAINST DEFENDANTS
## ROSEN and DANIELS-RIVERA
### (Hostile Work Environment under the Equal Protection Clause pursuant to Section 1983)

177.   Plaintiff repeats and realleges each allegation in each numbered paragraph above.

178.   The Individual Defendants subjected Plaintiff to a hostile working environment because of her race, color, and national origin.

179.   On account of Plaintiff's race, color, and national origin, the

- 33 -

Individual Defendants and others acting on their behalf, have continuously subjected Plaintiff to harassment which had the effect of unreasonably interfering with Plaintiff's work and created an intimidating, hostile or offensive work environment that seriously affected Plaintiff's psychological well-being.

180.  As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## ELEVENTH COUNT AGAINST DEFENDANTS
## ROSEN and DANIELS-RIVERA
### (Hostile Work Environment under the NYSHRL)

181.  Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

182.  The individual Defendants subjected Plaintiff to a hostile working environment differential because of her race, color and national origin.

183.  On account of Plaintiff's race, color, and national origin, the Individual Defendants and others acting on their behalf, have continuously subjected Plaintiff to harassment which had the effect of unreasonably interfering with Plaintiff's work and created an intimidating, hostile or offensive work environment that seriously affected Plaintiff's psychological well-being.

184.  As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## TWELFTH COUNT AGAINST DEFENDANTS
## <u>ROSEN and DANIELS-RIVERA</u>
### (Hostile Work Environment under the NYCHRL)

185.  Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

186.  The individual Defendants subjected Plaintiff to a hostile working environment differential because of her race, color, and national origin.

187.  On account of Plaintiff's race, color, and national origin, the Individual Defendants and others acting on their behalf, have continuously subjected Plaintiff to harassment which had the effect of unreasonably interfering with Plaintiff's work and created an intimidating, hostile or offensive work environment that seriously affected Plaintiff's psychological well-being.

188.  As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## <u>PUNITIVE DAMAGES</u>

189.  By reason of the wanton, unrepentant, reckless and egregious conduct of the individual Defendants herein-above alleged, Plaintiff claims punitive damages.

**WHEREFORE,** Plaintiff prays that this Court grant her judgment containing the following relief:

a.    Impanel a jury to hear Plaintiff's claims;

b.     Grant Plaintiff preliminary and permanent injunctions, prohibiting the Defendants, their agents, successors, employees, and those acting in concert with them and at their direction from engaging in any of the practices set forth above and any other practice shown to be unlawful or retaliatory or discriminatory on the basis of race, color and/national origin with respect to compensation, terms, conditions and privileges of employment;

c.     Establish and impose oversight and monitoring Defendants' activities to prevent further retaliation;

d.     Establish a mechanism to enforce the injunctions by requiring Defendants to present to the Court within 30 days of the issuance of the injunction, a plan showing precisely and in detail how they will comply with the Court's order;

e.     An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including loss of past and future earnings, bonuses, compensation, and other employment benefits;

f.     An award of damages to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

g.    An award of damages in an amount to be determined upon the trial of this matter to compensate plaintiff for violations of her rights under Title VII, Section 1983 and the Equal Protection Clause, the NYSHRL and the NYCHRL;

h.    An award of punitive damages to be determined at the time of trial for each cause of action;

i.    An award of reasonable attorney's fees and costs related to Plaintiff's claims under the Title VII, NYCHRL and Section 1983, and,

j.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       January 7, 2019

                                        Respectfully Submitted,

                                        SAMUEL O. MADUEGBUNA, ESQ.
                                        **MADUEGBUNA COOPER LLP**
                                        Attorneys for Plaintiff,
                                        FERLANDE MILORD-FRANCOIS
                                        30 Wall Street, 8th Floor
                                        New York, New York 10005
                                        (212) 232-0155
                                        sam.m@mcande.com

TO:    DEFENDANTS

    THE OFFICE OF THE MEDICAID INSPECTOR GENERAL
    Main Office
    800 North Pearl Street
    Albany, New York 12204

    DENNIS ROSEN
    THE OFFICE OF THE MEDICAID INSPECTOR-GENERAL
    Main Office
    800 North Pearl Street
    Albany, New York 12204

    JANINE DANIELS-RIVERA
    THE OFFICE OF THE MEDICAID INSPECTOR-GENERAL
    Main Office
    800 North Pearl Street
    Albany, New York 12204

*UNITED STATES DISTRICT COURT*
*SOUTHERN DISTRICT OF NEW YORK*              *Docket No.:*
-------------------------------------------------------------------------------------------
*FERLANDE MILORD-FRANCOIS,*

                              *Plaintiff,*

        *-against-*

*THE NEW YORK STATE OFFICE OF THE MEDICAID INSPECTOR GENERAL, DENNIS ROSEN, JANINE DANIELS-RIVERA, and JOHN and JANE DOE (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named Defendants),*

                              *Defendants.*
-------------------------------------------------------------------------------------------

                *COMPLAINT AND JURY DEMAND*

-------------------------------------------------------------------------------------------
*Signature (Rule 130-1.1-a)*
_____

*Print name beneath*
*SAMUEL O. MADUEGBUNA, ESQ.*

_____

                      *Yours, etc.*

                *MADUEGBUNA COOPER LLP*
                *Attorneys for Plaintiff*
                *30 Wall Street, 8th Floor*
                *New York, New York 10005*
                    *(212) 232- 0155*

*To: All Counsel of Record* _____

*Service of the within is hereby admitted on*
_____

*Attorneys for*