UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                    :

FERLANDE MILORD-FRANCOIS,           :

                         :

             Plaintiff,      :

                         :         19-cv-00179 (LJL)

       -v-                  :

                         :       OPINION AND ORDER

THE NEW YORK STATE OFFICE OF THE   :
MEDICAID INSPECTOR GENERAL,      :
DENNIS ROSEN, JANINE DANIELS RIVERA, :
and JOHN and JANE DOE,        :
                         X

              Defendants.

----------------------------------------------------------------------

LEWIS J. LIMAN, United States District Judge:

       This case returns to this Court following remand by the Second Circuit.  Plaintiff

Ferlande Milord-Francois ("Plaintiff" or "Milord-Francois") brings, *inter alia*, claims of hostile

work environment ("HWE"), retaliation, and discrimination under New York City Human Rights

Law ("NYCHRL") against Defendants Dennis Rosen ("Rosen") and Janine Daniels Rivera

("JDR") (together, "Individual Defendants") and the New York State Office of the Medicaid

Inspector General ("OMIG") (with the "Individual Defendants," "Defendants").  Dkt. No. 1.

Defendants move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on all

NYCHRL claims, arguing that state sovereign immunity bars all the NYCHRL claims and that

there is no genuine issue of material fact as to key elements of all the NYCHRL claims against

Rosen and the NYCHRL retaliation claim against JDR.  Dkt. No. 119.  For the following

reasons, the Court grants summary judgment on the NYCHRL claims against Rosen but denies

summary judgment on the NYCHRL retaliation claim against JDR.

## BACKGROUND

The relevant facts are set forth in the Court's prior opinion on summary judgment, Dkt. No. 103 at 2–18, and have been summarized by the Second Circuit, Dkt. No. 111 at 2–5.  The following facts are primarily drawn from the parties' statements submitted pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York and the evidence submitted in connection with this summary judgment motion.  Such facts are undisputed unless otherwise indicated.  The Court draws all reasonable inferences in favor of Milord-Francois, as the non-moving party.

Defendant OMIG is an independent office within the New York State Department of Health which was established to prevent, detect, and investigate fraud and abuse within the New York State medical assistance program (Medicaid) and recover improperly expended Medicaid funds.  Dkt. No. 130 ("Pl. 56.1") ¶ 1.  Since March 2015, Rosen has served as the Medicaid Inspector General.  *Id*. ¶ 2.  Since 2009, JDR has been General Counsel of OMIG within OMIG's Office of Counsel and is responsible for management and supervision of the office.  *Id*. ¶ 5.  The staff of the Office of Counsel includes a General Counsel, Deputy Counsel, Associate Counsel, Associate Attorneys, Senior Attorneys, and administrative support staff.  *Id*. ¶ 4.

Plaintiff Milord-Francois is an attorney in the OMIG Office of Counsel.  She began working as a Senior Attorney in the Office of Counsel in July 2010.  *Id*. ¶ 7.  Effective August 2015, JDR promoted her on a probationary basis to the position of Associate Attorney, along with one other Senior Attorney, Barry Mandel.  *Id*. ¶ 14.  At the time she promoted Plaintiff, JDR noted that Plaintiff "d[id] not have any experience supervising attorneys" and that "her interview was not superior to that of other candidates."  *Id*. ¶ 15.  But she noted:

> Given her presence within the agency, and familiarity with the work of the office, the decision is being made to invest in our own. . . . the decision is based on the fact that it is believed that this individual has the potential to become an effective

> supervisor. Furthermore, she should be given the opportunity to be trained to
> determine if she can develop the skills necessary to become an effective supervisor,
> and make the transition from colleague to supervisor, within the Office of Counsel.

*Id.* In September 2016, within her extended probationary period, she was demoted back to the

position of Senior Attorney after JDR issued a final, unsatisfactory probation evaluation report in

September 2016. *Id.* ¶¶ 36, 39.

Both Plaintiff and JDR are Black women. *Id.* ¶¶ 5, 6. Plaintiff is of Haitian descent. *Id.*

¶ 6. Mandel is a white man. *Id.* ¶ 12.

Plaintiff's claims of discrimination arise out of what the Court has previously

characterized as "a tense, unfriendly relationship" between Plaintiff and another Senior Attorney,

Robyn Henzel, and comments made by Henzel that a jury could reasonably find to be based on

race. *Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, 2020 WL 5659438, at

*2 (S.D.N.Y. Sept. 23, 2020). The claims also arise from actions taken or comments made by

JDR and by Rosen following the conduct and statements of Henzel. Henzel's conduct took place

both before and after Plaintiff's promotion. The Second Circuit has described Henzel's conduct

while Plaintiff was a senior attorney:

> Henzel once loudly asked Milord-Francois if she was "getting drugs in there?"
> when Milord-Francois entered a colleagues office for an aspirin. Henzel then told
> everyone at the office "that she was concerned about [Milord-Francois] taking
> drugs." Another time, during a ticker tape parade in front of the OMIG building,
> Henzel approached Milord-Francois "out of the blue" and said, "oh my God, your
> black face scares me." Lastly, Milord-Francois stated that she overheard Henzel
> telling other workers that she had to go to a funeral in Harlem and, if she did not
> return, then 'they' killed her, which Milord-Francois understood to refer to black
> residents in Harlem.

*Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, 2022 WL 480477, at *2 (2d

Cir. Feb. 17, 2022).

With respect to Rosen, Plaintiff met with Rosen several times. At one group meeting,

Rosen described Plaintiff as the one with the "fucking scowl face." Dkt. No. 134 (Def. Resp.

56.1 Statement) ¶ 116.  Rosen also met with Henzel over five times, and Henzel had conveyed to

him that Plaintiff looked "angry" or "scary."  *Id.* ¶ 120.  Rosen, at a certain point, also suggested

that he would recommend that Henzel and another attorney "sue the heck" out of Plaintiff and

Latwanda Manson, another Black lawyer at OMIG, "for discrimination" for holding a "gabfest"

in the hallway.  *Id*. ¶ 129–30.  Defendants dispute these facts on various grounds, including that

they are not supported or contradicted by the cited materials and rely on inadmissible hearsay.[1]

*Id.* ¶¶ 116, 120, 129–30.

Plaintiff complained on several instances to JDR about Henzel's conduct.  Two such

complaints were made immediately after Henzel—whose direct supervisor at the time was

Mandel—flatly refused to accept an assignment from Plaintiff on May 5, 2016.  Henzel started

screaming at Plaintiff and yelled, "[y]ou shouldn't have been an associate attorney."  *Milord-*

*Francois*, 2022 WL 480477, at *2.  The Second Circuit described what happened next:

> Shortly after, [JDR] convened a meeting with Plaintiff and other supervisors to
> discuss how the situation could have been handled differently.  At the meeting,
> Plaintiff told JDR that "there was nothing I could have done to alleviate the
> situation" because Henzel "calls me black face . . . [s]he called me angry face."
> Approximately a week later, [JDR] again met with [Plaintiff] to discuss what she
> was doing "to fix the problem" with Henzel, to which [Plaintiff] replied, "I cannot
> fix the problem.  It is not me. . . . [T]his girl uses racial slurs towards me."
> According to [Plaintiff], [JDR] replied that, "as a manager, you have to accept [it]
> – as a manager, I have dealt with [it].  As a manager, I have experienced it.  And as
> a manager, you have to deal with it."

*Id*.

---

[1] To the extent that Defendants object as hearsay to the use of Rosen's statements to Plaintiff that
he should recommend that Henzel and another attorney "get together and sue the heck out of
[Plaintiff] and Latwanda," a statement is not hearsay if it "is offered against an opposing party
and . . . was made by the party in an individual or representative capacity."  Fed. R. Evid.
801(d)(2).  Plaintiff offers Rosen's statements against him and were made by him in his
individual capacity, fulfilling the requirements for admissibility under Rule 801(d)(2).

Two months later in July 2016, JDR wrote probation reports for Mandel and Plaintiff, giving them both unfavorable ratings.  Pl. 56.1 ¶¶ 26, 31.  JDR wrote with respect to Plaintiff that certain events that had transpired in the office "illustrate a lack of care and good judgment and call into question [Plaintiff's] ability to effectively supervise staff," that Plaintiff had "been overheard making disparaging remarks and less than complimentary remarks about the leadership in the office, specifically the General Counsel," and that Plaintiff was not sufficiently reviewing the work of her supervisees.  *Id.* ¶ 26.  The comment about "disparaging remarks" was in reference to another incident in March 2016, when another attorney at OMIG had reported to JDR that Plaintiff, in discussing her performance evaluation with two other attorneys, had commented that JDR was a "bitch."  JDR Decl. ¶ 27.  Plaintiff disputes that she made this comment.  Pl. 56.1 ¶ 22.  JDR extended the probation period for both employees by a month, to give them time to address the issues noted in the interim report.  *Id.* ¶ 33; JDR Decl. ¶ 42.  In September 2016, JDR issued a negative probation report for Plaintiff, rating her work as predominantly unsatisfactory.  JDR demoted Plaintiff to Senior Attorney.  Pl. 56.1 ¶¶ 36, 39.

## PROCEDURAL HISTORY

Plaintiff initiated this action by complaint filed on January 7, 2019.  Dkt. No. 1.  Her complaint alleged (1) a claim against OMIG of discrimination on the basis of race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.* ("Title VII"), *id.* ¶¶ 139–45; (2) a claim of retaliation against OMIG also in violation of Title VII, *id.* ¶¶ 146–49; (3) a claim of discrimination on the grounds of race, color, and ancestry against Rosen and JDR in violation of the Equal Protection Clause of the United States Constitution made enforceable pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), *id.* ¶¶ 150–53; (4) a claim of retaliation under the Equal Protection Clause and Section 1983 against Rosen and JDR, *id.* ¶¶ 154–56; (5) a claim of discrimination on the grounds

of race, color, and national origin against Rosen and JDR under the New York State Human Rights Law, as contained in New York State Executive Law § 296, *et seq.* ("NYSHRL"), *id.* ¶¶ 157–61; (6) a claim of retaliation under the NYSHRL against Rosen and JDR, *id.* ¶¶ 162–64; (7) a claim of discrimination on the basis of race, color, and national origin against Rosen and JDR in violation of the NYCHRL, as contained in the Administrative Code of the City of New York § 8-107, *et seq.*, *id.* ¶¶ 165–69; and (8) a claim of retaliation in violation of the NYCHRL against Rosen and JDR, *id.* ¶¶ 170–72.  Plaintiff also brought claims for hostile work environment against OMIG in violation of Title VII, *id.* ¶¶ 173–76, and against Rosen and JDR under the Equal Protection Clause and Section 1983, *id.* ¶¶ 177–80, the NYSHRL, *id.* ¶¶ 181–84, and the NYCHRL, *id.* ¶¶ 185–88.

On January 31, 2020, Defendants moved for an order granting them summary judgment and dismissing all of the claims in the complaint.  Dkt. No. 76.  Defendants argued that Plaintiff could not establish a claim of discrimination because the probation reports issued against her were not adverse employment actions, there was an absence of evidence of discriminatory animus, and Defendants' actions were based on legitimate, non-discriminatory, and non-pretextual reasons; that Plaintiff's evidence did not establish a hostile work environment; and that she could not maintain a retaliation claim because there was no causal relationship between her alleged discrimination complaints in March and May 2016 and her September 13, 2016 demotion.  *See generally* Dkt. No. 77.

On September 23, 2020, the Court issued an opinion and order granting Defendants' motion for summary judgment as to Plaintiff's claims under Title VII, Section 1983, and the NYSHRL, and declining to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims. Dkt. No. 103.  The Court recognized that Plaintiff was a member of protected classes and had

suffered an adverse employment action when she was demoted from the probationary position of

Associate Attorney to Senior Attorney, but it held that she had not met her minimal burden to put

forth evidence suggesting an inference of discriminatory motivation.  *Id.* at 21.  Moreover, even

if the evidence permitted such an inference, Defendants rebutted it with evidence of legitimate,

nondiscriminatory and non-pretextual reasons for Plaintiff's demotion.  *Id.*[2]  The Court granted

summary judgment to Defendants on Plaintiff's claim of retaliation after concluding that, though

Plaintiff adduced evidence of protected activity and an adverse employment action, she failed to

identify evidence that would establish a but-for causal connection between Plaintiff's protected

activity and the adverse action.  *Id.* at 37–38.  The Court further held that Plaintiff had not

identified evidence to establish a claim of hostile work environment.  *Id.* at 44.  The Court

granted summary judgment to Defendants on Plaintiff's NYSHRL claims because those claims

were governed by the same substantive standards as Plaintiff's federal claims.  *Id.* at 51 (citing

*Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011)).  However,

the Court declined to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims, which

are evaluated under a more liberal standard, and dismissed those claims for lack of jurisdiction.

*Id.* at 52.

Milord-Francois appealed.  Dkt. No. 108.

The Second Circuit affirmed this Court's order in part and vacated and remanded it in

part.  Dkt. No. 110.  The Circuit vacated the Court's order granting Defendants summary

judgment on Plaintiff's claim of racial discrimination under Title VII and the NYSHRL and

---

[2] The Court also concluded that because Plaintiff had not met her burden under Title VII that the adverse action took place under circumstances giving rise to an inference of discrimination, she could not meet the "but for" standard under Section 1983.  *Id*. at 21 n.6 (citing *Naumovski v. Norris*, 934 F.3d 200, 214–15 (2d Cir. 2019)).

remanded the case for further proceedings with respect to those claims. *Id*. The court held that although the question was "close," Plaintiff had offered sufficient evidence "given the particular facts of this case" to support a prima facie case of discrimination by OMIG under Title VII and by JDR under NYSHRL based on race in light of JDR's statements that Plaintiff should "accept" and "deal with" Henzel's racist comments. *Id*. at 5. The court also concluded that, although Defendants had proffered a legitimate, non-discriminatory reason for demoting Plaintiff, a reasonable jury could conclude from JDR's comment that Plaintiff should "accept" and "deal with" Henzel's racist comments that JDR's reasons for demoting Plaintiff were pretextual and that the reasons for demoting her were based at least in part on race. *Id*.

The Second Circuit, however, ruled that this Court properly granted summary judgment on the status-based discrimination claims against Rosen because "no jury could find that Rosen caused [Plaintiff's] demotion." *Id*. at 6. The court also decided that Plaintiff had failed to establish "but-for" causation to support her Section 1983 claims given the "significant evidence" that the decision to demote her was based on perceived deficiencies in Plaintiff's work rather than any racial considerations. *Id*. The Circuit affirmed this Court's dismissal of Plaintiff's retaliation claims. As to Rosen, there was no evidence that he knew about Henzel's remarks to Plaintiff. As to JDR, a jury could not conclude that Plaintiff's termination was for her "complaints about Henzel's conduct, rather than her shortcomings as a supervisor." *Id*. at 6–7. The court further concluded that the facts were not sufficient to support a HWE claim because the events that Plaintiff identified did not alter the terms of her employment or interfere with her job. *Id*. at 7.

Having vacated the Court's grant of summary judgment on the racial discrimination claim against OMIG under Title VII and against JDR under NYSHRL, the court noted that this

Court's reasons for declining supplemental jurisdictional over the NYCHRL claims was no longer applicable and directed the Court to "consider, subject to sound discretion, whether it would be appropriate to exercise supplemental jurisdiction over [Plaintiff's] NYCHRL claims at this time." *Id*. at 7–8.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). To defeat a motion for summary judgment, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).

In cases involving claims of discrimination or retaliation, "an extra measure of caution is merited in affirming summary judgment . . . because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence found in affidavits and depositions." *Chiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockerfeller & Co., Inc.*, 258 F.3d 62, 69 (2d. Cir. 2001)) (internal citation omitted). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)). "[T]rial courts should not 'treat discrimination differently from other ultimate questions of fact,'" *id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)), and even in the discrimination context, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb*, 521 F.3d at 137.

## DISCUSSION

Defendants argue that the Court should grant summary judgment on Plaintiff's NYCHRL claims on three grounds. First, they argue that New York State's sovereign immunity bars

Plaintiff's NYCHRL claims because the allegations against Defendants are "devoid of any acts outside the individual defendant's official roles of hiring, supervising and terminating plaintiff." Dkt. No. 120 at 3 (quoting *Ajoku v. N.Y. Office of Temp. & Disability Assistance*, 2020 WL 886160, at *4 (N.Y. Sup. Ct. Feb. 20, 2020), *aff'd*, 152 N.Y.S.3d 566 (1st Dep't 2021)).  Second, they argue that there is no evidence of Rosen treating Plaintiff differently because of race, that he had no knowledge of Plaintiff's protected activity or of Henzel's alleged remarks, and that he was not the decisionmaker as to her demotion, warranting dismissal of all NYCHRL claims against him.  Third, they contend that Plaintiff's retaliation claims against JDR should be dismissed because there is no causal relationship between Plaintiff's alleged discrimination complaints in March and May 2016 and Plaintiff's September 2016 demotion, Plaintiff did not establish that her July 2016 performance review was motivated by retaliatory animus, and Plaintiff cannot show that JDR otherwise retaliated against her.  Dkt. No. 120 at 3.[3]

## I.      Sovereign Immunity

Defendants argue that Plaintiff's lawsuit against Rosen and JDR is barred by state sovereign immunity.  Dkt. No. 120 at 9–14.  They argue that even though the Complaint is brought nominally against the two defendants in their individual capacities, it pertains to Rosen and JDR's conduct in their official roles and does not identify "any independent duty arising from something other than the Defendants' official roles."  *Id.* at 11.  They argue that sovereign immunity bars claims "that fall entirely within their officers' official responsibilities of hiring, firing and supervision."  *Id.* at 11 n.8.  Plaintiff responds that sovereign immunity does not bar personal capacity lawsuits concerning the NYCHRL, Dkt. No. 131 at 5–7; that JDR and Rosen

---

[3] Plaintiff does not dispute that Rosen is entitled to summary judgment on Plaintiff's claims for discrimination and retaliation against her in his personal capacity under NYCHRL.  Dkt. No. 131 at 24.  The Court therefore grants summary judgment on those claims.

owed Plaintiff an individual duty under the NYCHRL that ensures that the state is not the true party of interest, *id.* 11–12; that Rosen and JDR were not engaged in a "governmental function" but were acting in a "proprietary" capacity, *id.* at 9–10; and acts constituting retaliation and propagating a HWE do not fall under "official duties," *id.* at 13–15.  Plaintiff also argues that Defendants waived the defense of sovereign immunity by its litigation conduct in not raising the issue until after the Second Circuit's decision and that the defense is barred by the mandate rule. *Id.* at 3–5.

The Court first addresses whether the sovereign immunity defense was waived.  It then addresses the merits of the argument.

### A.    Waiver

The parties agree that state law determines whether Defendants have waived their defense of general sovereign immunity.  *See* Dkt. No. 120 at 13 (relying on New York law); Dkt. No. 131 at 3 (arguing that the "waiver of state sovereign immunity is a question of state law"); *see also Alden v. Maine*, 527 U.S. 706, 757–58 (1999) (referring to state law to determine waiver of general sovereign immunity); *Coniff v. Vermont*, WL 5429428, at *4 (D. Vt. Sept. 30, 2013) ("[W]aivers of general sovereign immunity are determined by reference to state law."), *aff'd sub nom. Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015) (declining to specifically address the question).  Under New York law, sovereign immunity is considered to be an issue of subject matter jurisdiction that may not be waived.  *See Morrison v. Budget Rent A Car Sys.*, 657 N.Y.S.2d 721, 726–27 (2d Dep't 1997) (stating that "when a court lacks subject matter jurisdiction it may not acquire it by waiver," that it "may be raised at any time and may not be waived" and that the "sovereign immunity bar entails the affirmative defense of a lack of subject matter jurisdiction" (citation omitted)).  In *Morrison*, the defendants had expressly stipulated to waive the defense of subject matter jurisdiction, but had raised the defense of subject matter

jurisdiction in their answer.  *Id*. at 723.  The court held that such stipulated waiver was not operative when defendants later raised the defense of sovereign immunity.  *Id*.

Plaintiff relies primarily on *Belfand v. Petosa*, 148 N.Y.S.3d 467 (1st Dep't 2021), to argue that Defendants have waived their sovereign immunity defense through their conduct.  That case concerned the application of sovereign immunity in which a sister state—New Jersey—was the named defendant.  *Id*. at 459.  New Jersey had "conced[ed] liability and los[t] at the first trial on damages and then [sought] dismissal of the second trial on damages several years later, based not on the merits of the action but on an alleged 'new' defense of sovereign immunity."  *Id*. at 467.  That behavior "induced substantial reliance on that conduct . . . , and is inescapably a clear declaration to have our courts entertain this action."  *Id*.  Although New Jersey had not expressly consented to suit in New York, the court deemed that it had waived its sovereign immunity defense based on its litigation conduct, as "New Jersey Transit did not place plaintiff or the court on notice of its sovereign immunity defense by asserting it in its responsive pleading, and only raised the defense seven years after the action's commencement."  *Id*.  Such conduct is similar to Plaintiff's other cited case, *Fetahu v. N.J. Transit Corp.,* 154 N.Y.S.3d 50, 51 (1st Dep't 2021) (providing that "Defendant did not assert the defense until six years after commencement of this action"); *see also Taylor v. N.J. Transit Corp.*, 158 N.Y.S.3d 58, 59 (1st Dep't 2021) (applying *Belfand* where there had been no sovereign immunity defense in the answer).

Those circumstances are clearly distinguishable from those here.  This is not a case in which Defendants raised sovereign immunity for the first time only after a trial in which Defendants lost—the conduct at issue in *Belfand* that suggested deliberate gamesmanship.  Defendants raised sovereign immunity as a defense in their Answer.  *See* Dkt. No. 27 at 32.  Although Defendants did not raise the issue again before the conclusion of discovery, there would have been no reason for them to do so and there is no prejudice to Plaintiff from them

having not done so.  Discovery on the NYCHRL claims overlapped that on the NYSHRL and Federal claims; Defendants would not have been expected to raise the issue at that stage.  To be sure, Defendants did not separately argue sovereign immunity when they first briefed summary judgment, but their failure then to raise the issue did not, as in *Belfand*, cause Plaintiff any prejudice.  Defendants moved for summary judgment on all claims, and the Court granted the motion and dismissed the NYCHRL claims for lack of jurisdiction.  Plaintiff cannot even claim that Defendants required them to brief additional issues on the first summary judgment motion that Plaintiff would not have had to brief had Defendants raised sovereign immunity: the legal issues substantially overlapped and Defendants undoubtedly would have continued to argue, in the alternative, that Plaintiff failed to present a triable issue on her NYCHRL claim.  There thus could not have been any "substantial reliance" on the lack of that defense.  *Belfand*, 148 N.Y.S.3d at 467; *see also Colt v. N.J. Transit Corp.*, 169 N.Y.S.3d 585, 588 (1st Dep't 2022) (distinguishing *Belfand* and denying waiver in part on the fact that "NJT pleaded such a defense in varying forms in its answer").  Plaintiff has not identified any action that it took based on Defendants not making a sovereign immunity argument until now that it would not have taken had Defendants raised the issue. Finally, there was good reason for Defendants to not have moved earlier on grounds of state sovereign immunity.  The decision in *Ajoku*, further discussed below, upon which Defendants now rely was not rendered until after Defendants first moved for summary judgment in January 2020. Even assuming that the assertion of sovereign immunity was belated, "there is no record of duplicitous conduct by Defendants or of serious unfairness to Plaintiffs resulting from the tardy invocation of immunity."  *Beaulieu v. Vermont*, 807 F.3d 478, 490–91 (2d Cir. 2015).

Although not relied upon by Plaintiff to support her waiver argument, Defendants' conditional agreement that this Court exercise supplemental jurisdiction over the NYCHRL claims would also not constitute a waiver of sovereign immunity.  After the Second Circuit

remanded the case to this Court for consideration of whether the Court should exercise

supplemental jurisdiction, Defendants wrote that the Court should exercise supplemental

jurisdiction over the NYCHRL claims on the condition that Plaintiff dismiss its parallel action

premised on NYCHRL in state court.  Dkt. No. 112 at 2 n.1.  At the same time, Defendants

wrote that the Court should dismiss the action based on the defense of sovereign immunity that

would bar an action against the state or a state instrumentality in federal or in state court.  *Id.* at

2.  The action by which Defendants put Plaintiff on notice of its intent to argue state sovereign

immunity could not simultaneously constitute a waiver of state sovereign immunity.

As to the mandate, the Circuit directed the Court to consider whether it should exercise

supplemental jurisdiction.  Dkt. No. 111 at 8.  "The mandate rule compels compliance on remand

with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly

decided by the appellate court."  *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).  "To

determine whether an issue remains open for reconsideration on remand, the trial court should

look to both the specific dictates of the remand order as well as the broader 'spirit of the

mandate.'"  *Id.* (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir.1991)).  The

"mandate rule prevents relitigation in the district court not only of matters expressly decided by

the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate

court's mandate."  *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir.2012).  It is undisputed

that the Circuit did not address or impliedly resolve any questions of sovereign immunity as to

the NYCHRL claims.  The Circuit specifically remanded "for further proceedings" as to "the

district court's determination to exercise supplemental jurisdiction over the NYCHRL claims."

Dkt. No. 111 at 8.  The mandate assumes nothing about subject matter jurisdiction over the

NYCHRL claims.  It did not prohibit the Court from considering, even if there would be a basis

for the "exercise of supplemental jurisdiction," whether subject matter jurisdiction may be nonetheless foreclosed by other affirmative defenses.  *Cf. Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014) (finding it illogical to read mandate to remand to "district court to consider claims that were not previously pursued by the plaintiff, but prohibit[ ] the district court from considering defenses to those claims").

### B.    Sovereign Immunity Does Not Bar Plaintiff's Claims

Having concluded that sovereign immunity was not waived and that consideration of the defense is not foreclosed by the mandate rule, the Court proceeds to evaluate its merits.  Courts appear to be divided on whether state sovereign immunity applies to lawsuits against state officials in their personal capacities for violations of the NYCHRL.  Recently, in *Ajoku*, 2020 WL 886160, a New York State Supreme Court justice dismissed the NYCHRL claims of a former employee of a state agency that he had been discriminated against based on his national origin on grounds of sovereign immunity.  The court ruled that the individual defendants were entitled to sovereign immunity from the City law claim because "the complaint [wa]s devoid of any acts outside the individual defendant's official roles of hiring, supervising and terminating plaintiff." *Ajoku*, 2020 WL 886160, at *4.  The Appellate Division, First Department, affirmed the Supreme Court's decision.  It ruled that the complaint was properly dismissed because "plaintiff [has not] identified any independent duty on the part of defendant Deputy Commissioner Cheryl Contento to him, outside of the City HRL, which could serve as a vehicle for holding the State 'secondarily liable for the tortious acts under respondeat superior.'" *Ajoku v. New York State Off. of Temp. & Disability Assistance*, 152 N.Y.S.3d 566, 567 (1st Dep't 2021) (quoting *Morell v. Balasubramanian*, 514 N.E.2d 1101, 1102 (N.Y. 1987)).

By contrast, the federal courts historically have entertained claims under the NYCHRL against state officers arising from conduct taken by them in their official roles.  In *Feingold v.*

*New York*, 366 F.3d 138 (2d Cir. 2004), the Second Circuit held that NYCHRL claims against

the New York State Department of Motor Vehicles ("DMV") brought by a plaintiff employed by

the DMV who claimed that he was subjected to hostile treatment and ultimately terminated from

his employment because of his race, religion, and sexual orientation were "barred by state

sovereign immunity," *id*. at 149, but that the plaintiff could pursue claims under the NYCHRL

against the individual defendants in their individual capacities, *id.* at 158.  In *Ya-Chen v. City*

*Univ. of N.Y.*, 805 F.3d 59 (2d Cir. 2015), likewise, the court entertained, on the merits,

plaintiff's claims that her supervisors at the City College of New York, part of the City

University of New York system, had discriminated against her and fired her because or her race,

gender, and national origin and was a victim of retaliation.  *Id*. at 63.  Although the court

affirmed the district court's grant of summary judgment, it did not pause to address whether the

claim was barred by state sovereign immunity.  In neither case did the court consider the

question presented here whether principles of state sovereign immunity bar a claim brought

against a state employee in their individual capacity for violations of the NYCHRL.

 The few district court cases that have considered the question have concluded that a claim

of discrimination under the NYCHRL against a state officer is not barred by state sovereign

immunity, albeit often without extensive analysis.  *Purdie v. City University of N.Y.*, 2015 WL

129552 (S.D.N.Y. Jan. 8, 2015), is one of the limited number of cases to have addressed the

issue explicitly.  The court held that principles of state sovereign immunity did not bar a

NYCHRL claim against state officers in their individual capacities.  *Id*. at *5–6.  More

specifically, the court held that under New York state law "an officer is not immune from suit

simply because the suit arises out of his official actions; for an officer to be immune, the suit

must also really assert rights against the state."  *Id*. at *5 (citing *Morell*, 514 N.E.2d at 1102).

17

Rather, "a suit for money damages is treated as a suit against the state if it demands that the officer pay over state money, or if the suit is for a tort or breach committed by the state itself." *Id*. at *5. The court concluded that state sovereign immunity did not apply because "the City Human Rights Law imposes upon every manager a personal duty not to aid racial discrimination," and thus did not dismiss the NYCHRL claims against the defendants in their individual capacities based on state sovereign immunity. *Id*. at *6. Similarly, in *Huffman v. Brooklyn College*, 2022 WL 43766 (E.D.N.Y. Jan. 5, 2022), the court rejected the argument that NYCHRL claims against a state employee, in their individual capacity, were barred by sovereign immunity because the defendant could only have taken the challenged action "in her capacity as a State employee, [and] not in a personal capacity." *Id*. at *3 (quoting the motion to dismiss). The court reasoned that the defendant could be held liable as an aider and abettor and even then, "the logic of the sovereign immunity doctrine—which is meant to protect the state's fisc—does not extend to judgments against its employees." *Id*. at *5;[4] *see also Marquez v. Hoffman*, 2021 WL 1226981, at *22 (S.D.N.Y. Mar. 31, 2021) (stating that "courts routinely allow NYCHRL claims to proceed against state officials named in their individual capacity" and holding that sovereign immunity did not bar a claim that state defendants had engaged in retaliatory conduct that could not "be said to have been taken by these Defendants in their official capacities").

Other courts have sustained NYCHRL claims against state officers in their individual capacities while addressing only principles of Eleventh Amendment immunity or without addressing whether they are protected by the state's sovereign immunity. Plaintiff relies on

---

[4] It is unclear whether the *Huffman* court was addressing a claim of state sovereign immunity or Eleventh Amendment immunity. However, the *Huffman* court relies on *Bonaffini v. City University of New York*, 2021 WL 2895688 (E.D.N.Y. July 9, 2021), which appears to address both state sovereign immunity and Eleventh Amendment immunity. *Id*. at *1–2 & n.2 (citing *Morell*).

several of those cases in her briefing. *See* Dkt. No. 131 at 6; *see*, *e.g.*, *Branch v. State U. of New York*, 2020 WL 4057594, at *7 (S.D.N.Y. July 20, 2020) (holding that NYCHRL claims against state officer in his official capacity were barred by sovereign immunity but claims against the same defendant in his individual capacity were not barred); *James v. John Jay College*, 2020 WL 1911211, at *8 (S.D.N.Y. Apr. 20, 2020) (holding that NYCHRL claims can proceed against individual defendants sued individually while sustaining the state defendant's Eleventh Amendment claim). Those courts have also often relied on the text of the NYCHRL and its textual basis for individual liability. *See*, *e.g.*, *Sutter v. Dibello*, 2019 WL 4195303, at *21 (E.D.N.Y. Aug. 12, 2019) (holding that while NYCHRL claims against Unified Court System were barred by Eleventh Amendment sovereign immunity, NYCHRL claims could proceed against defendants individually because "the text of the NYCHRL clearly provides for individual liability"), *R&R adopted*, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019); *Harrison v. SUNY Downstate Med. Ctr.*, 2018 WL 4055278, at *7 (E.D.N.Y. July 6, 2018), *R&R adopted*, 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018) ("Similarly, the NYCHRL imposes liability on 'any person.' *E.g.*, N.Y.C. Admin. Code § 8-107(1)(a)."); *Doran v. N.Y.S. Dept. of Health*, 2017 WL 836027, at *10 (S.D.N.Y. March 2, 2017) (permitting NYCHRL claims against state officials in their individual capacities).

The Court's task in deciding this question of state law is to predict how the New York Court of Appeals would rule if "squarely confronted" with the question whether an action seeking to hold state officers individually liable under the NYCHRL violates state sovereign immunity. *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). The decision of the state intermediate court is not binding on this Court, it but may not be disregarded unless the Court "is convinced by other persuasive data that the highest court of the state would decide otherwise."

*Id.* at 112 (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).  The Court

accordingly starts with the decision of the New York Court of Appeals in *Morell*, 514 N.E.2d

1101.  It then proceeds to analyze whether the NYCHRL imposes independent obligations on

employees, including state employees.  Finally, the Court considers the decision of the First

Department in *Ajoku*.

In *Morell*, the New York Court of Appeals considered whether a malpractice action

against State-employed physicians for their alleged negligent medical treatment of the plaintiff

was barred by principles of state sovereign immunity.  *Id.* at 1101–02.  The court drew a

distinction between those claims that were based on conduct engaged in by the defendant in her

capacity as a State employee but that violated an independent duty imposed by law that did not

arise by virtue of state employment and those claims that sought to hold the employee liable

based on a duty imposed on her employer—the State.  The court held that the latter category of

claims were barred by sovereign immunity, but the former were not.  It stated:

> A suit against a State officer will be held to be one which is really asserted against
> the State when it arises from actions or determinations of the officer made in his or
> her official role *and involves rights asserted, not against the officer individually,
> but solely against the State*.

*Id.* at 1102 (emphasis added).  The court further concluded that it was irrelevant that the State

could also be held secondarily liable, in respondeat superior, for the employee's conduct: where

"the suit against the State agent or officer is in tort for damages arising from the breach of a duty

owed individually by such agent or officer directly to the injured party, the State is not the real

party in interest—even though it could be held secondarily liable for the tortious acts under

respondeat superior."  *Id.*  The key under *Morell* is thus whether state law imposes the duty

individually on the state employee.  If it does, then the fact that the employee happens to have

engaged in the tortious conduct while performing a state function does not shield her from

liability.  The court offered, as an example, a state employee who negligently operates a motor

vehicle causing injury to another.  The fact that the employee happened to be operating a state

vehicle in the course of her employment does not relieve her from the obligation to drive with

care or from liability if she fails to do so:  "an action arising out of a traffic accident against a

hospital operating a State ambulance service was not one against the State as real party in

interest."  *Id*. at 1102–03 (citing *Murtha v. New York Homeopathic Med. Coll. & Flower Hosp.*,

126 N.E. 722, 722 (N.Y. 1920)).

Thus, under New York law, a state employee is not shielded from individual liability for

a claim based upon his or her personal violation of law even if the employee is "doing the state's

work."  *Murtha*, 126 N.E. at 722.  "The general rule is that an agent acting upon his master's

business who negligently causes injury to the property of a third person is personally liable to the

third person."  *Columbia Mach. Works v. Long Island R. Co.*, 47 N.Y.S.2d 383, 385 (1st Dep't

1944).  By contrast, where the duty sought to be enforced is one that resides with the State and

where the individual is sued only as an incident of being employed by the State and as a means

to reach the State and hold it liable, the mere fact that the plaintiff has engaged in the artifice of

identifying an individual is insufficient to avoid sovereign immunity.  *See*, *e.g.*, *Psaty v. Duryea*,

118 N.E.2d 584, 586 (N.Y. 1954); *Samuel Adler, Inc., v. Noyes*, 32 N.E.2d 781, 781 (N.Y.

1941); *Automated Ticket Sys., Ltd. v. Quinn*, 416 N.Y.S.2d 864, 865 (3d Dep't 1979), *aff'd as*

*modified*, 403 N.E.2d 454 (N.Y. 1980).

Although the New York Court of Appeals has not directly addressed the issue, its

analysis in *Morell* strongly and persuasively suggests that it would hold that state employees who

in the course of their employment engage in conduct that violates the NYCHRL are not, by

virtue of their state employment alone entitled to immunity.  The obligation that the NYCHRL

imposes on state employees is individual and personal; it is not derivative of the obligation owed by the State or a state agency.  Section 8–107(1)(a) of the NYCHRL makes it unlawful "for an employer *or an employee or agent thereof* . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment."  N.Y.C. Admin. Code § 8–107(1)(a) (emphasis added).  Thus, the provision by its terms imposes a duty on each employee, irrespective of her employer's conduct, not to engage in discrimination, including the creation of a hostile work environment.  "Unlike under Title VII, individuals may be held liable under . . . NYCHRL if they 'actually participated in the conduct giving rise to the discrimination claim.'" *Britt v. Merrill Lynch & Co*., 2011 WL 4000992, at *11 (S.D.N.Y. Aug. 26, 2011); *see also Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) (same).  The NYCHRL "includ[es] fellow employees under the tent of liability."  *Priore v. New York Yankees*, 761 N.Y.S.2d 608, 614 (1st Dep't 2003); *see also Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2d Dep't 1998) (denying motion for summary judgment on NYCHRL claims because in contrast to NYSHRL, the NYCHRL "expressly provides that it is unlawful for 'an employer or an employee or an agent thereof' to engage in discriminatory employment practices"); *see also Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012) ("The NYCHRL provides a broader basis for direct individual liability than the NYSHRL.").  Even if the State or the state agency which is the employer is not held liable, the disjunctive phrasing of the NYCHRL makes clear that state employees owe duties under the law and can be held personally liable for violation of those duties.  No different from a state-employed physician who violates the duty of care owed to his patient, or the state-employed driver who violates the duty of care to a pedestrian, the fact that the individual defendants here were employed by the State

does not relieve them from the obligation to follow the law or from the consequences in liability if they fail to do so.

The New York Court of Appeals thus is unlikely to follow the decision of the First Department in *Ajoku*.  The First Department stated:

> The motion court likewise properly dismissed the City HRL claims, on the ground of sovereign immunity and lack of subject matter jurisdiction (see *Jattan v. Queens Coll. of City Univ. of N.Y.*, 64 A.D.3d 540, 542, 883 N.Y.S.2d 110 [2d Dept. 2009])

The court then stated:

> Nor has plaintiff identified any independent duty on the part of defendant Deputy Commissioner Cheryl Contento to him, outside of the City HRL, which could serve as a vehicle for holding the State "secondarily liable for the tortious acts under respondeat superior" (*Morell v. Balasubramanian*, 70 N.Y.2d 297, 301, 520 N.Y.S.2d 530, 514 N.E.2d 1101 [1987]).

*Ajoku*, 152 N.Y.S.3d at 567.

Neither the authority cited by the First Department in *Ajoku* nor its analysis are persuasive that the Court of Appeals would rule similarly.  The sole case cited by the First Department—*Jattan*—did not involve a claim against a state employee sued in his individual capacity.  *Jattan* involved a claim under the NYCHRL against an "instrumentalit[y] of the State," Queens College.  883 N.Y.S.2d at 113.  It thus was unexceptional that *Jattan* upheld the claim of state sovereign immunity.  The plaintiff there sought to hold a state instrumentality liable for violation of that state instrumentality's duty.  *See*, *e.g.*, *Glassman v. Glassman*, 131 N.E.2d 721, 724 (N.Y. 1956) (describing how sovereign immunity "preserves . . . control over state funds, property and instrumentalities" and "describing how a "state instrumentality" may be "clothed with the sovereign immunity of the state" when it "engage[s] in an important government function"); *Breen v. Mortg. Comm'n of State of New York*, 35 N.E.2d 25, 27 (N.Y. 1941) (stating that "[i]n many of these cases the problem presented for determination is whether the action is against an agency of the State, or whether it is against a public official in his

23

personal capacity"); *see also United States v. Lee*, 106 U.S. 196, 206 (1882)) (describing the "instruments" of the sovereign as part of "supreme executive power" underlying sovereign immunity).  It does not follow that sovereign immunity would also extend to a claim seeking to hold a state employee *personally* liable for a violation of that person's individual duty.

 The court further reasoned that the *Ajoku* plaintiff failed to identify an independent duty on the individual defendant "outside of the City HRL, which could serve as a vehicle for holding the State 'secondarily liable for the tortious acts under respondeat superior.'"  *Ajoku*, 152 N.Y.S.3d at 567 (quoting *Morell*, 514 N.E.2d at 1102).  But there is no obligation on Plaintiff to identify an independent duty "outside of the City HRL."  *Id*.  The NYCHRL itself imposes an independent duty on employees—whether they are employees of a state agency, a city agency, or a private company.  And there is no reason that a duty imposed by the NYCHRL should be treated differently under *Morell* than a duty created by a City or State safety code or by common law that imposes personal liability on the individual.

The claim that a violation by an employee of the NYCHRL would not make the State liable under principles of respondeat superior does not lead to a different result.  An independent duty "aris[es] from the breach of a duty owed individually by such agent or officer directly to the injured party," and *Morell* instructs that whether the State "could be held secondarily liable for the tortious acts under respondeat superior" is immaterial to that distinction.  *Morell*, 514 N.E.2d at 1102–03.  Indeed, it is precisely in those cases where sovereign immunity is available to shield the State itself that it is critical that that the individual employee can be held personally liable—were it otherwise, the injured victim would have no available means for relief.

Finally, Defendants state that they are "not arguing that sovereign immunity always bars NYCHRL claim [sic] brought against officers sued in their individual capacity.  Rather,

sovereign immunity bars only those claims, as here, that fall entirely within the officers' official responsibilities of hiring, firing, and supervision, which are not derived from any independent duty of the officers."  Dkt. No. 120 at 11 n.8.  They, in essence, argue for a "fact specific" inquiry beyond the "clever pleading" of suing the Individual Defendants in their individual capacity.  Dkt. Nos. 135 at 5, 120 at 11.  But there is nothing particularly clever, or novel, in Plaintiff's pleading.  Plaintiff seeks to hold the individuals liable because New York City law imposes a duty on the individuals *qua* individuals.  If Plaintiff prevails, she will have a judgment against the individual, and not against the State.  Thus, there is no reason that a defendant should enjoy personal immunity from discriminatory actions arising from her supervision of a subordinate that she would not have with respect to any other violation of law, including discrimination, taken by her.  There are no "specific facts"—aside from the facts that she is sought to be held personally liable for violation of a duty owed by her individually—that would bear on the sovereign immunity analysis.[5]

Indeed, Defendants' argument sounds, if at all, in principles of qualified immunity—the concept that federal and state law shield individual state employees from personal liability for conduct undertaken by them on behalf of the state when such personal liability could have a "chilling effect" on their performance of state duties.  *See*, *e.g.*, *Davila v. City of New York*, 33 N.Y.S.3d 306, 310 (2d Dep't 2016) (describing qualified immunity as necessary to give "breathing room to make reasonable but mistaken judgments").  But Defendants do not raise that

---

[5] Defendants also cite to *Thomas v. Tarpley*, 700 N.Y.S.2d 697, 698 (N.Y. 1st Dep't 2000). That decision is opaque on whether the defendants there were sued in their individual capacities, but cites *Pleasant Ridge Townhouse Homeowners' Ass'n v. Wickieri*, 624 N.Y.S.2d 230, 231 (N.Y. 2d Dep't 1995), which relies on *Morell* in stating that a suit against a State officer, in order to invoke the defense of sovereign immunity, must involve "rights asserted not against the officer individually but solely against the State," *id.*  To the extent that *Tarpley* indicated otherwise, that decision is also mistaken.

defense here and for good reason.  "[T]he principles of New York law governing the availability of qualified immunity for violations of state law differ somewhat from . . . federal law."  *Lore v. City of Syracuse*, 670 F.3d 127, 165 (2d Cir. 2012).  "[T]he New York standard for entitlement to qualified immunity has both objective and subjective components."  *Id*.  The objective component concerns whether the act is discretionary.  *Id*.  As for the subjective component, "[g]overnment officials or employees who make decisions that are discretionary, but not judicial in nature, are entitled to qualified immunity unless there is bad faith or the action is taken without a reasonable basis, even where a claim is based on a violation of the NYSHRL."  *Russell v. Westchester Cmty. Coll*., 2017 WL 4326545, at *13 (S.D.N.Y. Sept. 27, 2017).  Under those standards, qualified immunity would not protect an employee from liability for an action "taken with discriminatory intent and, thus, in bad faith."  *Sutter v. Dibello*, 2021 WL 930459, at *35 (E.D.N.Y. Mar. 10, 2021); *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 587, 600 (S.D.N.Y. 2011) (finding that conduct constituting sexual discrimination and harassment in workplace was not protected by qualified immunity because it was not objectively reasonable).[6]

## II.    NYCHRL Claim for HWE against Rosen and JDR

Plaintiff only presses her NYCHRL HWE claim against Rosen and abandons her NYCHRL retaliation and discrimination claims against him.  The Second Circuit affirmed this Court's ruling granting summary judgment on Plaintiff's NYSHRL retaliation and discrimination claims because "no jury could find that Rosen caused [Plaintiff's] demotion."  *Milord-Francois*,

---

[6] In addition, the State may also exempt its employees from claims brought against them in their individual capacities for certain acts within the scope of their employment.  *See*, *e.g*., N.Y. Correct. Law § 24 (McKinney) (barring suits against a correction officer "in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee").

2022 WL 480477, at *3.  There is no apparent reason why the result would be different under the NYCHRL.

Defendants argue that Rosen should be granted summary judgment on the NYCHRL HWE claim.  They contend the "stray remarks" from Rosen to her are "no more than 'petty slights and trivial inconveniences.'"  Dkt. No. 129 at 18.  They also argue that Rosen had no knowledge of Henzel's allegedly discriminatory remarks, so he could not have condoned or failed to remediate them.  *Id*. at 18–19.  Plaintiff contends that Rosen failed to take proper action as a supervisor and, based on several incidents, that he "encouraged a HWE" against her.  *Id*. at 20.  She further argues that Henzel also created a HWE.  *Id*. at 20–21.  For the following reasons, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's NYCHRL HWE claim against Rosen.

"[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims," *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), as the "NYCHRL is designed to be more lenient toward plaintiffs than its federal and state equivalents," *Dillon*, 85 F. Supp. 3d at 654.  "Under the NYCHRL, a plaintiff claiming a hostile work environment need only demonstrate that he or she was treated 'less well than other employees' because of the relevant characteristic."  *Bilitch v. N.Y.C. Health & Hosps. Corp.*, 148 N.Y.S.3d 238, 245 (2d Dep't 2021).  "The NYCHRL imposes liability for harassing conduct that does not qualify as 'severe or pervasive,' and 'questions of "severity" and "pervasiveness" are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability.'"  *Espinosa v. Weill Cornell Med. Coll.*, 2021 WL 1062592, at *9 (S.D.N.Y. Mar. 19, 2021).  However, "Plaintiff nonetheless has the burden of showing that the . . . conduct complained of was caused by a discriminatory motive; 'it is not enough that a plaintiff has an

overbearing or obnoxious boss.'"  *Dillon*, 85 F. Supp. 3d at 657 (quoting *Mihalik*, 715 F.3d at

110).  In other words, "the NYCHRL is not a "general civility code," *Mihalik*, 715 F.3d at 110

(quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009)).  Still,

"even a single comment may be actionable in the proper context."  *Dillon*, 85 F. Supp. 3d at 654.

      As noted previously, the NYCHRL imposes personal liability on employees for their own

discriminatory conduct.  Rosen can be liable here, if at all, only under that provision.  The New

York Court of Appeals has held that "[t]he unique provisions of the City HRL provide for broad

vicarious liability for employers but that liability does not extend to individual owners, officers,

employees, or agents of a business entity."  *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 462 (N.Y.

2021); *see also Bueno v. Eurostars Hotel Co., S.L.*, 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10,

2022) ("Under a recent decision by the New York Court of Appeals, a corporate employee—

even its owner and CEO—no longer qualifies as an 'employer' under these statutes.").

Moreover, Plaintiff does not allege an aiding and abetting theory of liability against Rosen.  Thus

she only alleges a direct theory of liability.

      Even under the more permissive standard for alleging a HWE under NYCHRL and

construing the admissible evidence in favor of Plaintiff, the record is inadequate to state a HWE

claim against Rosen.  Plaintiff states that Rosen created a HWE by "adopting Henzel's view of

Milord and using to dress down Milord" after "Henzel complained to him that Plaintiff looked

'angry' or 'scary,' and Rosen said he himself saw Plaintiff looking angry," Dkt. No. 131 at 19–

20, "repeating Henzel's 'black scary face' comment that he changed to be 'fucking scowl face,'"

*id*. at 20, "threaten[ing] Milord for talking with Manson and bothering Henzel," *id*., and

"suggesting that Henzel should sue the only black legal employees for discrimination for

bothering Henzel—Milord and Manson," *id*..  Those arguments are similar to those presented

when the Court originally considered and granted Defendants' summary judgment motion

dismissing Plaintiff's claim that Rosen created a HWE under the NYSHRL.  After reviewing all

of the evidence, this Court previously concluded that "[e]ven viewed in the light most favorable

to Plaintiff, the evidence could not be construed by a reasonable juror to reflect impermissible

bias.  At most, it reflects coarsely expressed concern about Plaintiff's demeanor and her

relationship with Henzel, a concern Plaintiff believed to be unfair and unwarranted.  But there is no

evidence that favoritism or rudeness was the product of racial bias."  *Milord-Francois*, 2020 WL

5659438, at *14.  The Second Circuit did not disturb that ruling.

Plaintiff "has failed to produce evidence to create a question of fact as to whether she was

subjected to a hostile work environment [by Rosen] because of her protected characteristics."

*Marseille v. Mount Sinai Health Sys., Inc.*, 2021 WL 3475620, at *11 (S.D.N.Y. Aug. 5, 2021)

(dismissing NYCHRL claims failure to show linkage to a protected characteristic); *see id.*

(listing cases concluding similarly).  Rosen's statement on Henzel's "fucking scowl face," while

intemperate and potentially hostile, did not reflect any racial animus or discriminatory treatment of

Plaintiff because of her race as "there is no evidence that Rosen himself knew of the earlier comment

or was referring back to it."  *Milord-Francois*, 2020 WL 5659438, at *14.  It does not create a HWE

for a supervisor to chide a supervisee for expressing an unpleasant demeanor at work or to dress an

employee down.  Nor does the claim that Rosen favored Henzel over Plaintiff suffice to create a

HWE.  While there is evidence that Rosen questioned Plaintiff on why she looked angry,

Maduegbuna Decl. Ex. 24 at 118, that conduct neither qualifies as harassing nor as discriminatory.  It

is not enough that a plaintiff has "an overbearing or obnoxious boss."  *Dillon*, 85 F. Supp. 3d at

657 (citation omitted).  As for Rosen's statement that Henzel "could" sue for discrimination,

Rosen's full testimony indicates that he had a "concern that Robyn expressed that her Jewishness was

a factor."  Dkt. No. 129-24 at 139.  There is no evidence that such concern was pretextual and

"Plaintiff fails to adduce any evidence other than self-serving testimony" that the threat related to Plaintiff's race. *Marseille*, 2021 WL 3475620, at *10,

Thus for substantially the same reasons that the Court granted summary judgment to defendants on Plaintiff's NYSHRL claim against Rosen, which was affirmed by the Second Circuit, the Court grants summary judgment to Defendants on Plaintiff's NYCHRL claim against Rosen.

Finally, Defendants seek summary judgment on the HWE claim under NYCHRL against JDR "[i]nasmuch as Plaintiff's Opposition makes clear that her HWE claims against Rosen and JDR rely entirely on the behavior of Henzel." *See* Dkt. No. 135 at 8.  For previously stated reasons, the Court agrees that JDR cannot be held vicariously liable for the actions of Henzel under NYCHRL for the HWE claim.  But to the extent that Defendants attempt to seek summary judgment on Plaintiff's HWE claim against JDR based on JDR's actions, that argument is waived because it was raised for the first time in a reply brief, *see Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007), *aff'd*, 288 F. App'x 721 (2d Cir. 2008) (listing cases), and it is foreclosed by the Circuit's holding.  The Circuit has stated that there is a genuine issue of material fact over JDR's statement to Plaintiff "to 'accept' and 'deal with it'" and whether JDR was "perpetuating a racial stereotype by suggesting that Milord-Francois, as a black woman, should ignore racism." *Milord-Francois*, 2022 WL 480477, at *3.  Because the bar for a status-based discrimination claim is lower under NYCHRL than NYSHRL and Title VII, *see Dillon*, 85 F. Supp. 3d at 654, and because the NYCHRL does not differentiate between HWE and discrimination claims, that statement is enough to sustain the HWE claim under NYCHRL as well against JDR. *Konteye v. New York City Dep't of Educ.,* 2019 WL 3229068, at *7 (S.D.N.Y. July 18, 2019) ("NYCHRL does not differentiate between discrimination and hostile work environment claims, which means that this Court should perform the same analysis on Plaintiff's

hostile work environment claim as it does on his discrimination claim."); *see also Ramirez v. Michael Cetta Inc.*, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020) (same).

## III.  NYCHRL Claim for Retaliation against JDR

Defendants argue that the Court should grant summary judgment on the NYCHRL retaliation claim against JDR because there is no causal relationship between Plaintiff's discrimination complaints and her demotion; Plaintiff has not established that her 2016 performance review was motivated by retaliatory animus; and Plaintiff cannot show JDR otherwise retaliated against her.  Dkt. No. 120 at 19–15.  Plaintiff contends that there are triable issues of fact for this claim.  Dkt. No. 131 at 22–24.  For the following reasons, the Court denies summary judgment on the NYCHRL retaliation claim against JDR.

Section 8–107(7) of the NYCHRL states that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter."  N.Y.C. Admin. Code § 8–107(7).  "'[T]o make out an unlawful retaliation claim under the NYCHRL, a plaintiff must show that (1) he or she engaged in a protected activity as that term is defined under the NYCHRL, (2) his or her employer was aware that he or she participated in such activity, (3) his or her employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct.'"  *Bilitch v.*, 148 N.Y.S.3d at 246.  "Individual employees who actually participate[d] in the conduct giving rise to the plaintiff's claim may be found liable for retaliation under NYCHRL."  *Dillon*, 85 F. Supp. 3d at 662 (internal quotation marks omitted).  "New York courts have broadly interpreted the NYCHRL's retaliation provisions."  *Mihalik*, 715 F.3d at 112 (citation omitted); *see also Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011) ("[W]e must construe

Administrative Code § 8–107(7), like other provisions of the City's Human Rights Law, broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.").

"Summary judgment dismissing a claim under the NYCHRL should be granted only if no jury could find [the] defendant liable under any of the evidentiary routes—*McDonnell Douglas*, mixed motive, direct evidence, or some combination thereof." *Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 680 (2d Dep't 2019) (quoting *Persaud v. Walgreens Co.*, 76 N.Y.S.3d 613, 615 (2d Dep't 2018)); *see also Mihalik*, 715 F.3d at 116 (assessing a retaliation claim under both the pretextual analysis of *McDonnell Douglas* and the mixed motive framework, and stating that "summary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision"); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 862 (S.D.N.Y. 2013) (assessing NYCHRL retaliation claim under a mixed-motive analysis). With respect to "mixed motive" analysis, "the newer mixed motive framework . . . imposes a lesser burden on a plaintiff opposing such a motion." *Sanderson-Burgess*, 102 N.Y.S.3d at 680 (quoting *Persaud*, 76 N.Y.S.3d at 615). "[U]nder the mixed motive analysis, the plaintiff may defeat the defendant's evidence of legitimate reasons for the challenged action by coming forward with evidence from which it could be found that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for [the] adverse employment decision." *Hamburg v. N.Y. Univ. Sch. of Med.*, 62 N.Y.S.3d 26, 32 (1st Dep't 2017).

Defendants argue that there is no causal relationship between Plaintiff's discrimination complaints and her subsequent demotion. In particular, they contend that the two complaints from Plaintiff—one occurring in a closed-door meeting with JDR in or around April or May

32

2016, and another during a May 6, 2016 meeting with JDR, Glick, and Mandel—were "too attenuated to establish causation" to her subsequent demotion in September 2016.  Dkt. No. 120 at 19–20.  This Court, however, previously ruled that the temporal connection between Plaintiff's comments to JDR in May 2016 about the "angry face" and "black face" remarks and the subsequent negative July Probation Report in July 2016, followed by the decision to demote Plaintiff in September 2016 was "sufficient to create a temporal connection" that made out a "prima facie case for retaliation under Title VII."  *See Milord-Francois*, 2020 WL 5659438, at *18 (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (stating that "five months is not too long to find [a] causal relationship")); *see also Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (stating that "a five-month time frame" for an adverse action "may not be exceptional"); *Craven v. City of New York*, 2020 WL 2765694, at *6 (S.D.N.Y. May 28, 2020) (finding that retaliation claims under NYCHRL based on an adverse employment action that occurred five months after was sufficient to state a claim).  While Defendants also contend that temporal proximity standing alone is insufficient to satisfy the burden to show evidence of pretext, Dkt. No. 120 at 21, the Second Circuit determined in its summary order that JDR's statement to Plaintiff that she had to "deal with it" presents a genuine issue of material fact as to whether JDR's "reason for demoting her is pretextual, and that this decision 'was based, at least in part,' on her race."  *Milord-Francois*, 2022 WL 480477, at *3. Defendants' argument concerning a lack of pretext is squarely foreclosed by the Second Circuit's holding.

Defendants also argue that Plaintiff has not established that her July 2016 or September 2016 performance reviews were motivated by retaliatory animus.  They contend that JDR's concerns with Plaintiff's performance predated her complaints and that there is no evidence that

the reasons provided for the negative review were pretextual.  Dkt. No. 120 at 21–24.  But again, the reasoning of the Second Circuit here is binding on this Court.  The statement at issue from JDR to Plaintiff—that "[A]s a manager, you have to accept [it]—as a manager, I have dealt with [it].  As a manager, I have experienced it.  And as a manager, you have to deal with it," *Milord-Francois*, 2020 WL 5659438, at *4—occurred in May 2016, before her July and September 2016 performance reviews.  If that statement presents a genuine issue of material fact as to "Daniels-Rivera's reason for demoting her," which was presented as Plaintiff's "unsatisfactory performance as an Associate Attorney," *id.* at *3, then the statement also presents a genuine issue of material fact as to whether the July 2016 and September 2016 probation reports were pretextual.  Because "summary judgment is appropriate only if the plaintiff cannot show that retaliation played *any* part in the employer's decision," *Mihalik*, 715 F.3d at 116 (emphasis added), that holding from the Second Circuit forecloses summary judgment.[7]

Even if JDR had concerns about Plaintiff's performance prior to Plaintiff's complaints, that does not exclude the possibility that at least part of the motivation behind her negative performances reviews and eventual demotion were related to Plaintiff's complaints.  Here, Defendants' argument is again foreclosed by the holding of the Second Circuit.  Although the Second Circuit found that JDR was unable to show "that racial stereotyping 'played a decisive role' in her demotion, such that she can establish 'but-for' causation," *Milord-Francois*, 2022

---

[7] The presence of JDR's comment also distinguishes this case from the other cases cited by Defendants in the EEOC charge context, in which there were no such intervening comments that could present a genuine material issue of fact as to whether the alleged employment action was based on a protected characteristic.  *See, e.g.*, Dkt. No. 120 at 22 (citing *Palummo v. St. Vincent's Med. Ctr.*, 4 F. App'x 99, 102 (2d Cir. 2001)).  With respect to *Clark County School District v. Breeden*, 532 U.S. 268, 272 (2001)), that case is distinguishable because the transfer decision at issue there was "concededly" already contemplated before the defendant had learned of the suit. *Id.* at 272.

WL 480477, at *4, the court nonetheless concluded that Plaintiff had raised enough evidence to present a genuine issue of fact that JDR's demotion decision was "based, at least in part," on her race. *Id*. at *3 (quoting *Holcomb*, 521 F.3d at 141). Defendants contend that the Circuit "made no finding that any retaliatory motive influenced JDR's decision." Dkt. No. 120 at 24. But, if based upon the timing and the alleged pretextual reason for JDR's actions, a jury reasonably could find that her actions were based at least in part on race, it could also reasonably conclude that the actions were based on Plaintiff's complaints about racial discrimination. *See Mihalik*, 715 F.3d at 116; *see also Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018) (describing how for retaliation claims, Title VII and NYSHR impose a but for causation, whereas for NYCHRL claims, the plaintiff must show that the retaliation was pretextual or motivated "at least in part" by an impermissible motive).[8]

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 119.

SO ORDERED.

Dated: October 18, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[8] Finally, Defendants contend that Plaintiff has not shown that other similarly situated employees were treated differently, relying on *Allen v. St. Cabrini Nursing Home, Inc.*, 198 F. Supp. 2d 442, 450 (S.D.N.Y. 2002). Defendants argue that JDR treated Mandel in a similar manner, who was also on probationary appointment. But Defendants' argument only addresses one means of showing evidence of an intent of discrimination or retaliation. *Allen* itself stated that comparison with "other similarly situated employees" is simply one way of proving an "inference of retaliation," with other potential means being "showing that the retaliatory action was close in time to the protected activities," or "offering direct proof of retaliatory animus." *Id*. at 450.